UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WILLIAM B. JOLLEY,** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 21-cv-2709 (TSC) |
| **UNITED STATES OF AMERICA,** *et al.,* | )<br>) |
| Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION

Plaintiff William B. Jolley, proceeding *pro se*, is a U.S. Air Force veteran and a former employee of the U.S. Department of Housing and Urban Development (HUD). Compl. at 2-3, 7, ECF No. 1. He sues the United States and HUD's Secretary for claims under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), the Age Discrimination in Employment Act of 1967 (ADEA), the Americans with Disabilities Act (ADA), and the U.S. Constitution. *Id.* at 2-5. For the reasons set forth below, Defendants' Motion to Dismiss, ECF No. 39 (Defs.' Mot.), will be GRANTED in part and DENIED in part.

### I.   BACKGROUND

**A. Factual Background**

At the motion to dismiss stage, the court assumes the following allegations from the Complaint to be true. Plaintiff was employed by HUD from 1963 to 1972 and from 2004 to 2010. Compl. at 7. The conflict between HUD and Plaintiff began in 2003, when Plaintiff sued

1

the agency alleging age discrimination. *Id.* at 8. That case was settled in 2004, with HUD offering Plaintiff a GS-15 position and $60,000. *Id.* Following the settlement, Plaintiff returned to work for HUD as a Field Officer in its Jacksonville, Florida office from 2004 to 2007. *Id.* While in that role, Plaintiff was frequently given clerical work below his qualifications, such as receptionist duties, and faced "covert animosity that was manifested occasionally by intemperate personal directions by the Jacksonville office Director." *Id.* Despite these issues, Plaintiff describes his work for HUD in every position as "successful[], polite[], and professional[]." *Id.* at 9.

Plaintiff alleges that in 2007, HUD's "uncooperative and disparaging treatment" escalated after he successfully litigated a USERRA claim against the Department of Homeland Security (DHS), challenging the operation of the Federal Law Enforcement Training Center that DHS operates in conjunction with HUD. *Id.* at 8. Plaintiff claims that in early 2008, HUD initiated a "'reorganization' that was not authorized as required by law" and directed Plaintiff to accept the position of Field Office Director for the State of Idaho "or be fired." *Id.* Plaintiff was not allowed to transfer to "other identical and vacant positions at locations closer to [his] home, family, and interests," and ultimately accepted the Boise, Idaho position. *Id.* at 8-9. Later, Plaintiff sought to swap positions with a willing director based in Springfield, Illinois, but HUD rejected the proposal. *Id.* at 9. After Plaintiff eventually left the Boise position in 2010, the director from Springfield was transferred to Plaintiff's former role. *Id.*

In 2018, Plaintiff applied for his previously held and newly available position as a GS-15 Field Office Director for HUD in Boise. *Id.* at 2-3. He alleges that he was not selected for the position due to his "advanced age," his hearing disability, and his past litigation of a USERRA

2

claim before the Merit Systems Protection Board (MSPB). *Id.* at 3. After he applied, HUD cancelled the initial announcement and six months later released two GS-14 announcements for the same position, allegedly to avoid hiring him for the GS-15 Director position. *Id.* Plaintiff claims that when "HUD investigated [his] complaint" about that change, presumably at the EEOC charge stage, both the "Selecting Official" and Plaintiff's former supervisor refused to provide affidavits to the agency investigator to explain Plaintiff's non-selection for the Boise Field Office Director position in 2018. *Id.* at 5, 9.

### B. Procedural History

Over the years, Plaintiff has litigated several claims regarding his employment with HUD. *Id.* at 3-4, 6, 8; Defs.' Mot. at 8-9, 13. In one complaint to the MSPB, Plaintiff claimed that his "retirement in 2010 was involuntary and constituted a constructive removal." *Jolley v. HUD*, No. SF-0752-13-0583-I-1, 2015 WL 847859 (M.S.P.B. Feb. 26, 2015). In that case, Plaintiff alleged discrimination based on his status as a veteran and retaliation for whistleblower disclosures. *Id.* The MSPB found that Plaintiff's "discrimination and retaliation claims [did] not support a finding of involuntary retirement," and dismissed the claims for lack of jurisdiction. *Id.* Plaintiff appealed to the U.S. Court of Appeals for the Federal Circuit, and while that Court agreed that the MSPB had no jurisdiction over the involuntary retirement claim, it held that the MSPB did have jurisdiction over Plaintiff's USERRA challenge to his reassignment and remanded to MSPB to consider the merits of that claim. *Jolley v. Merit Sys. Prot. Bd.*, 636 F. App'x 567, 570 (Fed. Cir. 2016); Compl. at 4, 6. Although the MSPB had not rendered a decision at the time Plaintiff brought this case, the MSPB held in 2022 that Jolley had "not established his claim that the agency violated his USERRA rights" in directing his reassignment.

3

*Jolley v. Dep't of Hous. and Urban Dev.*, Nos. SF-0752-13-0583-M-1 and SF-0752-14-0286-M-1, 2022 WL 1600004, at *1 (M.S.P.B. May 20, 2022).

In April 2019, Plaintiff filed a complaint with the EEOC, alleging that his 2018 non-selection was the result of age and disability discrimination.  Compl. at 3; ECF Nos. 17-2, 17-3.[1] In March 2020, while his case was pending before the EEOC, Plaintiff also filed a lawsuit in this district.  *See Jolley v. United States*, 549 F. Supp. 3d 1 (D.D.C. 2020).  In that suit, Plaintiff alleged that "USERRA's review process violates his right to equal protection because, unlike federal employees, private sector employees may bring their USSERA claims in federal court." *Id.* at 3.  Plaintiff also claimed that "USERRA's requirement that federal employees must seek relief administratively from the MSPB violates Article III of the Constitution," and that "the MSPB's Administrative Judges before whom federal employees are required to appear are not designated consistent with the requirements of the Appointments Clause." *Id.*  The court ultimately dismissed the action for lack of subject matter jurisdiction.  *Id.* at 6.  That case remains on appeal.  *See Jolley v. United States*, No. 21-5181 (D.C. Cir.).

Meanwhile, on November 2, 2020, Plaintiff failed to attend an initial telephone conference for his EEOC action.  ECF No. 17-4, at 2.  The next day, the EEOC issued an Order Authorizing Discovery and to Show Cause.  *Id.*  Plaintiff did not respond until December 24,

---

[1] "A court may take judicial notice of facts contained in public records of other proceedings." *Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016), *aff'd,* 869 F.3d 976 (D.C. Cir. 2017) (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007); *Covad Commc'ns Co. v. Bell Atlantic Co.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)). "Further, judicial notice may be taken of public records and government documents available from reliable sources." *Id.* (citation omitted).

4

2020, when he advised the EEOC that because 180 days had passed without an EEOC decision, he had brought this suit—raising the same issues as the EEOC complaint—in the Southern District of Indiana on December 15, 2020.  ECF No. 17-5 at 1-2, 5.  The EEOC consequently dismissed Plaintiff's action, construing his email as a withdrawal and explaining his noncompliance with the adjudicative process.  ECF No.17-5.  Specifically, the EEOC found that Plaintiff "did not enter his appearance for the Initial Conference, Prehearing Conference, submit PCI, respond to the Agency's Motion for Summary Judgment, . . . submit [a] Witness list . . . [or] cooperate, in a timely manner, with the Agency."  ECF No. 17-5 at 2-3.

On October 14, 2021, the District Court for the Southern District of Indiana granted Defendants' motion to dismiss for improper venue and transferred this case to the District of Columbia pursuant to 28 U.S.C. § 1406(a).  ECF No. 33.  On December 21, 2021, Defendants filed a Renewed Motion to Dismiss under Federal Rules of Procedure 12(b)(1) and 12(b)(6).  Mot. to Dismiss, ECF No. 39.

## II.     LEGAL STANDARD

### A.  Rule 12(b)(1)

Rule 12(b)(1) addresses a court's subject-matter jurisdiction.  "Because Article III courts are courts of limited jurisdiction, we must examine our authority to hear a case before we can determine the merits."  *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008) (citation omitted).  While courts must construe *pro se* filings liberally, *U.S. v. Byfield*, 391 F.3d 277, 281 (D.C. Cir. 2004), a litigant must still demonstrate that the court has subject-matter jurisdiction, *Stoddard v. Wynn*, 68 F. Supp. 3d 104, 110 (D.D.C. 2014) (citing *Khadr*, 529 F.3d at 1115) ("The party claiming subject matter jurisdiction bears the burden of demonstrating that such

jurisdiction exists."). Further, "a Rule12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

**B. Rule 12(b)(6)**

Rule 12(b)(6) permits a party to move for dismissal on the grounds that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint only establishes a facially plausible claim if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

"The Court is mindful that a *pro se* litigant's complaint is held to a less stringent standard than formal pleadings drafted by lawyers." *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987) (citing *Redwood v. Council of the District of Columbia,* 679 F.2d 931 (D.C. Cir. 1982); *Haines v. Kerner,* 404 U.S. 519 (1972)). The court must grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States*, 61 F.2d 605, 608 (D.C. Cir. 1979)). However, this standard "does not constitute a license for a plaintiff filing *pro se* to ignore the Federal Rules of Civil Procedure or expect the Court to decide what claims a plaintiff may or may not want to assert." *Jarrell*, 656 F. Supp. at 239.

### III. ANALYSIS

Plaintiff's claims fall into four categories: (1) employment discrimination based on age or disability; (2) unlawful retaliation for having "pursued USERRA rights," (3) the "remanded USERRA issue in Federal Circuit case No. 2015-3187," and (4) constitutional challenges to USERRA's special treatment of veterans, as well as the appointment of MSPB and EEOC administrative law judges. Only the first category of claims survives Defendants' Motion to Dismiss; the remainder fail on jurisdictional grounds.[2]

#### A. Age or disability discrimination

In Count I, Plaintiff claims HUD "decided that it would not hire [him] because of . . . his hearing disability; and/or because of his advanced age." Compl. at 3. He relies on the ADEA and ADA for his corresponding claims against HUD. *Id.* at 5. The ADA does not apply to disability discrimination claims against federal employers, 42 U.S.C. § 12111(5)(B), which are instead authorized by the Rehabilitation Act, 29 U.S.C. § 791. But, because "[c]ourts must construe pro se filings liberally," *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because Plaintiff would likely be granted leave to amend the Complaint, and because the Defendants will not be prejudiced, the court will construe Plaintiff's disability discrimination

---

[2] Plaintiff asks the court to (1) find Defendants "in default for failure to answer the Complaint," and (2) deny the Motion to Dismiss for failure to comply with Local Rule 7(a)'s direction for a motion's Table of Authorities to "asterisks in the margins to the left of those cases or authorities on which counsel chiefly relies." Opposition to Motion to Dismiss at 1-2, ECF No. 41 (Opp'n). The court rejects both requests. The first ignores the court's December 7, 2021 Minute Order, which permitted Defendants to "answer or otherwise respond to the Complaint" and thereby authorized the renewed Motion to Dismiss. As for the second request, any violation of the rules "should be guided by the concept of proportionality between offense and sanction," *Klayman v. Judicial Watch, Inc.*, 6 F.4th 1301, 1312 (2021) (quotation omitted), and here the minor omission of asterisks in the Table of Authorities does not warrant denying the entire Motion to Dismiss.

claims as brought under the Rehabilitation Act. *See Welsh v. Hagler,* 83 F. Supp. 3d 212, 216-17 (D.D.C. 2015).[3]

A plaintiff alleging employment discrimination faces a "low hurdle at the motion to dismiss stage." *Winston v. Clough*, 712 F. Supp. 2d 1, 11 (D.D.C. 2011). While a plaintiff must plead "sufficient facts to show a plausible entitlement to relief," *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011), he need not plead each element of a prima facie employment discrimination case, *Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014) (citing *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008)). It is enough to plead facts such as "what happened, who was involved . . . and how such conduct constitutes . . . discrimination." *Arnold v. Speer*, 251 F. Supp. 3d 269, 273 (D.D.C. 2017).

Plaintiff has adequately pled his age and disability discrimination claims. According to the Complaint, HUD knew of Plaintiff's age and disability since they had previously settled one of his discrimination claims. Compl. at 3, 8. HUD officials had also allegedly engaged in patterns of "animosity" and "disparaging treatment" towards Plaintiff. *Id.* at 8-9. Plaintiff had previously and proficiently held the same position for which he applied. *Id.* a 3, 8. Nonetheless, Plaintiff was not hired, the position was withdrawn and reposted with slightly different qualifications just after he applied, and HUD directors failed to provide alternative reasons for

---

[3] Unlike the ADEA, the Rehabilitation Act has a jurisdictional exhaustion requirement. *Compare Bain v. Off. of Att'y Gen.*, No. 21-cv-1751 (RDM), 2022 WL 17904236, at *15 (D.D.C. Dec. 23, 2022) (ADEA) (citing *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)), *with Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (Rehabilitation Act). Plaintiff satisfied the exhaustion requirement when he filed his initial complaint with the EEOC. *See Doak v. Johnson*, 798 F.3d 1096, 1104 (D.C. Cir. 2015). His subsequent failure to comply with EEOC's procedures does not bar this suit because "issues concerning how a claimant participates in th[e] administrative process . . . are not of jurisdictional moment." *Id.* (citing *Koch v. White*, 744 F.3d 162, 164-65 (D.C. Cir. 2014)).

his non-selection. *Id.* Construed liberally, those allegations establish the "what," "who," and "how" of Defendants' discrimination. Indeed, they largely make out a prima facie discrimination claim under *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802 (1973) (holding that a complainant may establish a prima facie case of employment discrimination "by showing (i) that he belongs to a [protected class]; (ii) that he applied and was qualified for a job . . . ; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants"). As a result, dismissal of Plaintiff's claims under the ADEA and Rehabilitation Act is not warranted at this stage.[4]

### B. USERRA retaliation

Plaintiff also claims that HUD "decided that it would not hire" him "because he had successfully pursued USERRA rights" in prior cases. Compl. at 3. In essence, Plaintiff's claim is that Defendants unlawfully retaliated against him for exercising his rights under USERRA, which the statute expressly prohibits. *See* 38 U.S.C. § 4311(b).

But this court lacks jurisdiction over that USERRA claim. Under the statute, an individual who believes his employment rights have been violated by a Federal agency may seek an investigation by the Secretary of Labor, followed by an adjudication of their complaint before

---

[4] Plaintiff also argues that HUD violated its statutory requirements to publicize and conduct a cost-benefit analysis of any field reorganization when it (1) reassigned him from Florida to Idaho in 2007-2008 and (2) changed the grading of the 2018 job posting "to avoid hiring Plaintiff," Compl. at 3, 8; 42 U.S.C. § 3535(p), and that he has the right to judicial review of that agency action under the Administrative Procedure Act (APA), 5 U.S.C. § 702. Pl.'s Opp'n to Mot. to Dismiss at 6-7. But APA review is only available when "there is no other adequate remedy in a court." 5 U.S.C. § 704. Here, "Congress has provided plaintiff with statutory schemes and remedies through which [he] may seek relief" for his discrimination claims—the ADEA and Rehabilitation Act. *Mittleman v. U.S. Treasury*, 773 F. Supp. 442, 449 (D.D.C. 1991). "Thus, [his] APA claim is properly dismissed under § 704." *Id.*; *see Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988); *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009).

the MSPB. *See* 38 U.S.C. § 4324. If dissatisfied with the MSPB's final order or decision, the individual "may petition the United States Court of Appeals for the Federal Circuit [for] review." *Id.* The administrative scheme does not provide for USERRA claims to be litigated before district courts. *See, e.g.*, *Dew v. United States*, 192 F.3d 366, 372 (2d Cir. 1999) ("Section 4324 does not authorize a private USERRA action against the Federal Government, as an employer, in federal district court; rather, it confers jurisdiction upon the [MSPB]."). Plaintiff has not identified an MSPB final decision on this claim for judicial review, and in any event the proper court of review would be the Federal Circuit. Therefore, the USERRA retaliation claim will be dismissed.

### C. MSPB remand decision

Count II of the Complaint claims that the remand of a MSPB case was "ignored by the MSPB even when the MSPB had adequate board members to render action on the remand." Compl. at 4; *see Jolley v. Merit Sys. Prot. Bd.*, 636 F. App'x 567, 570 (Fed. Cir. 2016) (remanding for the MSPB to decide whether there was jurisdiction over Plaintiff's reassignment claim). Plaintiff asks the court to "decide the remanded USERRA issue in Federal Circuit case No. 2015-3187." As explained above, however, judicial review of such USERRA issues is reserved exclusively to the Federal Circuit.[5] Moreover, it appears that since the Complaint was filed, MSPB has issued a decision in the remanded case. *See Jolley v. Dep't of Hous. and Urban*

---

[5] Plaintiff invokes the Declaratory Judgment Act as a basis for the court's jurisdiction over the remanded USERRA issues. But "Declaratory Judgment Act remedies are available only if "'a judicially remediable right' already exists." *Seized Prop. Recovery, Corp. v. U.S. Customs & Border Prot.*, 502 F. Supp. 2d 50, 64 (D.D.C. 2007) (citation omitted). The Declaratory Judgment Act therefore cannot operate as "an independent source of federal subject matter jurisdiction." *GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995).

*Dev.*, Nos. SF-0752-13-0583-M-1 and SF-0752-14-0286-M-1, 2022 WL 1600004, at *1 (M.S.P.B. May 20, 2022). Accordingly, the "issue[] presented [is] no longer live" and the claim is moot. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). Defendants' motion to dismiss Count II will therefore be granted.

### D. Constitutional challenges

Counts III, IV, and V each raise constitutional claims, but all three suffer from fatal jurisdictional defects.

Two of Plaintiff's claims are precluded by the rule against claim splitting, which "requires that all claims arising out of a single wrong be presented in one action." *Dorsey v. Jacobson Holman PLLC*, 764 F. Supp. 2d 209, 212 (D.D.C. 2011) (citation omitted). To "ensure fairness to litigants and to conserve judicial resources," a plaintiff may not engage in claim splitting by "seek[ing] to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Clayton v. Dist. of Columbia*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014) (citations and quotations omitted). While the D.C. Circuit has never ruled on a claim-splitting issue, judges in this district "all seem to agree that courts can discretionarily dismiss claims from subsequent actions for claim-splitting." *Smith v. Dist. of Columbia*, 387 F. Supp. 3d 8, 19 (D.D.C. 2019) (citing 18 Charles Alan Wright et al., Federal Practice & Procedure § 4406 n.20 (3d ed. 2019)).

Plaintiff argues that USERRA's exhaustion procedures in 38 U.S.C. § 4324 violate the Equal Protection Clause by giving federally employed veterans "fewer legal options to protect their rights" than other employees, *see* Compl. at 4 (Count III), and that the MSPB's administrative law judges are unconstitutionally appointed under the Supreme Court's decision

in *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018), *see* Compl. at 4-5 (parts of Counts IV and V). Those are precisely the same claims Plaintiff made in his prior suit in this district. *See Jolley*, 549 F. Supp. 3d at 3 ("Plaintiff claims that (1) USERRA's review process violates his right to equal protection because, unlike federal employees, private-sector employees may bring their USERRA claims in federal court; (2) USERRA's requirement that federal employees must seek relief administratively from the MSPB violates Article III of the Constitution; and (3) the MSPB's Administrative Judges before whom federal employees are required to appear are not designated consistent with the requirements of Appointments Clause."). The court will not permit Plaintiff to duplicate those claims here, and therefore grants Defendants' motion to dismiss those counts.

That leaves only Plaintiff's related claim (in Counts IV and V) that administrative law judges in EEOC are "constitutionally unqualified to decide the cases they are assigned." Compl. at 4-5. With respect to this claim, however, Plaintiff lacks standing. "Plaintiffs bear the burden of demonstrating that they have standing to bring suit with respect to each of their claims." *Citizens for Resp. & Ethics in Washington v. Cheney*, 593 F. Supp. 2d 194, 225 (D.D.C. 2009); *see Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing for a claim. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). But Plaintiff has not met even that low bar. He does not identify any action by an EEOC administrative law judge that harmed him. Indeed, he failed to participate in the EEOC's investigation process, and the EEOC ultimately dismissed his complaint. *See* ECF No. 17-5. Thus, Plaintiff has failed to establish standing for the claim that the EEOC administrative law judges are unconstitutionally

appointed, much less plead facts sufficient to make that claim plausible. This claim will therefore be dismissed as well.

## IV.   CONCLUSION

For the reasons set forth above, the court will GRANT in part and DENY in part Defendants' Motion to Dismiss, ECF No. 39. Specifically, all of Plaintiff's claims will be dismissed except for the claims of age and disability discrimination, under the ADEA and Rehabilitation Act, reflected in Count I of the Complaint. A corresponding Order will accompany this Memorandum Opinion.

Date:  May 24, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge